UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TROYRON GLADNEY,

        Plaintiff,

v.

JEFFRY GETTINGS and
UNKNOWN PARTIES,

        Defendants.
_____/

Case No. 1:22-cv-467

Hon. Paul L Maloney

**REPORT AND RECOMMENDATION**

This is a civil action brought by *pro se* plaintiff Troyron Gladney ("Gladney"), a resident of South Bend, Indiana, against Kalamazoo County Prosecutor Jeffrey Getting (named as "Gettings").  This matter is now before the Court on defendant Getting's motion to dismiss (ECF No. 8).

By way of background, this is Gladney's second lawsuit filed against Prosecutor Getting.  The Court dismissed Gladney's first lawsuit filed against Getting and three assistant prosecutors for failure to state a claim and entered a judgment in defendants' favor on March 31, 2022.  *See Gladney v. Gettings et al.*, 1:21-cv-64 (W.D. Mich.) ("*Gladney I*") (Report and Recommendation ("R&R"), Opinion and Judgment) (ECF Nos. 28, 35 and 36).  In *Gladney I*, plaintiff set out conclusory claims that Prosecutor Getting discriminated against Gladney based on his sex, race and disability.  *See Gladney I* (Compl., ECF No. 1, PageID.2-3).  Gladney also sued two assistant prosecutors (Michael Stein and Allen Harbaugh) for refusing to press criminal

charges against a woman who falsely accused Gladney of rape and against Justin Workman for dismissing a criminal case against Gladney for assaulting a police officer. *Id.*[1]

### I. Gladney's complaint

Gladney initiated this lawsuit by filing a document with the confusing title:

> [Proposed] Complaint in intervention for violations of: (1) Title II of the Civil Rights Act of 1964; (2) 42 U.S.C. § 1981; (3) Michigan Disability Act and Elliot Larson Law; (4) State Tort Law; (5) Michigan Civil Rights

Compl. (ECF No. 1, PageID.1) (emphasis omitted). In this complaint, Gladney characterized himself as an "intervenor" in his previously dismissed lawsuit (*Gladney I*). While Prosecutor Getting is the only named defendant in this case, Gladney's complaint continues to refer to three of the defendants dismissed in *Gladney I*, *i.e.*, "Defendants . . . Allen Harbaug [sic], Michael Stein and Justin Workman." *Id.* at PageID.2.

In describing the "Nature of this Action" of his complaint, Gladney sets out nonsensical legalese that he is a plaintiff and an intervenor in his previously dismissed case:

> Through this Complaint, Plaintiff-Intervenor intervenes as of right in the action commenced in this Court on March 4, 2022 against Defendant by Troyron Gladney v. *Gettings, etal* [sic], Case No. 22-1151, 42 U.S.C. § 2000e-5(f)(1).

*Id.* at PageID.3. The citation "Case No. 22-1151" refers to Gladney's improper appeal of an R&R entered in *Gladney I* to the Sixth Circuit Court of Appeals. Gladney filed the present case about one month after the Sixth Circuit dismissed the improper appeal. *See Gladney v. Getting, et al.*, No. 22-cv-1151 (Order Dismissing Appeal) (6th Cir. April 27, 2022).[2]

---

[1] In *Gladney I*, the undersigned pointed out that "Gladney alleged no injuries which resulted from the deprivation of civil rights or the conspiracy" and that "[o]n the contrary, Gladney benefited from Workman's dismissal of the criminal charges filed against him." *See Gladney I* (R&R at ECF No. 28, PageID.111).

[2] A copy of the Sixth Circuit's Order of Dismissal appears in *Gladney I* at ECF No. 37.

Like the complaint filed in *Gladney I*, the complaint in the present case includes virtually no factual allegations to support Gladney's claims. The few specific facts alleged in the complaint appear in the *second* paragraph identified as paragraph "13" (the complaint has two paragraphs identified as "13") and in the one-paragraph "Statement of Facts" found in ¶ 19:

> 13.    Plaintiff-Intervener Troyron Gladney is a man of African descent. He lived as a citizen of Kalamazoo Michigan from approximately July 12, 1991, until on or around August 11, 2019. Thereafter, Plaintiff-Intervenor moved on Aug 11, 2019 out of state Indiana [sic]. . . .
>
> 19.    At all times material to this action, Plaintiff-Intervenor was a resident of Kalamazoo Michigan.  Also, a person with a mental disability also receiving SSI [Supplemental Security Income].

Compl. at ¶ 19, PageID.4.

In a section entitled "Exhaustion of Administrative Remedies" Gladney states:

> During the pendency of the EEOC's processing and investigation of Plaintiff-Intervenor's charge of discrimination, there wasn't an investigation due to no due process on the Defendants [sic] part and prior to the EEOC's issuance of a Notice of Right to Sue, Plaintiff-Intervenor necessarily initiated an action in the United States Northern Court of Indiana County of ST. [sic] Joseph, in order to preserve her California statutory and common law claims.  That action styled *Troyron Gladney* v. *Gettings et al., Inc., et al*. [sic] No. 1:21-cv-00064 (Filed Jan. 20, 2021).  That action was dismissed with prejudice by Michigan Western District immediately upon this Court's exercise of supplemental jurisdiction over the state law claims contained herein.

Compl. at PageID.4-5.[3]  There is no record of EEOC proceedings filed in this case.

While Gladney's complaint is 15 pages long, he does not identify the alleged wrongful conduct committed by Prosecutor Getting or the dates when such wrongful conduct occurred. Nevertheless, Gladney alleged nine claims for relief and claims for an injunction and declaratory judgment.  Gladney's complaint appears to be a haphazardly prepared "cut and paste"

---

[3] At times, Gladney refers to himself as "her".

document. In addition to having two paragraphs identified as "13", the complaint has an erratic numbering system which omits over 100 paragraphs (¶¶ 7, 23-53, 89-103, 110-138, 146-153, 161-190, and, 192-204).

In his First Claim for relief, "[Hostile Program Environment Based on National Origin in Violation of Title II of the Civil 97 Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)]", Gladney alleged that "Defendants [sic] subjected Plaintiff-Intervenor to unwelcome conduct by ignoring him, as a term and condition of his complaint, and failed to enforce their Policy or refuse services to [incomplete sentence]." Compl. at PageID.5-6. Gladney also alleged that he "witnessed State Prosecutors openly abide by their personal feelings not Policy" and that "[h]and-written notes indicating that Defendants [sic] would not provide services to Plaintiff and enforce the Policy." *Id*. at PageID.6. Gladney also stated that, "The Defendants [sic] actions in relation thereto created a hostile program environment for Plaintiff-Intervenor because of her national origin, Afro American." *Id*.[4] While Gladney's complaint repeatedly refers to a "program," he does not identify the program at issue.[5]

In his second claim for relief, "[National Origin Discrimination (Disparate Treatment) in Violation of Title II of the Civil 141 Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)], Gladney alleged that "Defendants [sic] discriminated against Plaintiff-Intervener [sic] by ignoring him on the basis of his national origin, Afro American." *Id*. at PageID.7. Gladney provides no further facts.

In his third claim for relief, "[Retaliation in Violation of ARTICLE II of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a)], Gladney alleged that

---

[4] This allegation includes footnote no. 5, but no text for the footnote.

[5] As discussed, *infra*, Gladney's Response to the motion to dismiss included a document which may identify the program referred to in his complaint.

4

> Plaintiff-Intervenor engaged in protected activity by making numerous complaints to Defendants' [sic] agents and employees about Defendants' [sic] program practice that required Plaintiff-Intervenor, as a term and condition of his complaints, to enforce and engage in the Policy of refusing services to customers based on their perceived national origin, Afro American or Black.

*Id*. at PageID.8.  While Gladney claims retaliation, he alleged no facts regarding the nature of the retaliation, the adverse action taken against him, or the date any of these occurred.

In his fourth claim for relief, "[Constructive ignoring in Violation of Title II of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)]", Gladney alleged that defendant "created discriminatory and intolerable program conditions for Plaintiff-Intervener [sic]."  *Id*. Gladney does not state when this occurred, does not identify the program, and does not set out the alleged discriminatory acts.

In his fifth claim for relief, "[Race Discrimination (Disparate Treatment) in Violation of 42 U.S.C. § 1981]," Gladney alleged that "Defendants [sic] discriminated against Plaintiff-Intervenor by demoting her on the basis of her race, Middle Eastern."  *Id*. at PageID.9. Gladney does not allege how she was "demoted" or discriminated against, and included no allegation that her race was "Middle Eastern."  While Gladney's use of the term "demoted" suggests that she was an employee of the Kalamazoo County Prosecutor's Office, there is no allegation of employment.

In his sixth claim for relief, "National Origin Discrimination (Disparate Treatment) in Violation of the FEHA, MI. Gov't Code § 12940(a)", Gladney cited the Americans with Disability Act, and then alleged that, "Defendants discriminated against Plaintiff-Intervenor by ignoring him on the basis of his national origin, Afro American."  *Id*. at PageID.10.  These allegations do not set forth a cause of action.  In addition, Gladney mis-cited "FEHA" [the California Fair Employment and Housing Act", Cal Gov't Code § 129040], to suggest that this is

a Michigan statute.  "FEHA" is a California statute which does not apply to Gladney's claims which occurred in Michigan.  *See Sadiqyar v. Mission Essential, LLC*, No. 2:19-CV-04292, 2020 WL 5210850, at *3 (S.D. Ohio Sept. 1, 2020) ("California state and federal courts, including the Ninth Circuit Court of Appeals, have repeatedly held that FEHA does not apply to conduct outside of California.").

In his seventh claim for relief, "Failure to Prevent Discrimination and in Violation of the FEHA, MI. Gov't Code. [sic]", Gladney states "Under the Elliot Larson law, it is unlawful '[f]or an entity . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring.' MI. Gov't. [sic]".  *Id*. at PageID.10-11.  Gladney alleged,

> Defendants [sic], their [sic] agents, and/or employees failed to take all reasonable steps necessary to prevent discrimination and a hostile program environment based on national origin, including, but not limited to, failure to investigate Plaintiff-Intervenor's complaints regarding the Policy, failure to rescind the Policy, and failure to remedy Plaintiff-Intervenor's unlawful discrimination.

*Id*. at PageID.11.  Gladney does not identify the program, the policy, the nature of the discrimination, or the date the discrimination allegedly occurred.

In his eighth claim for relief, "[Immediate Payment and Waiting Time Penalties Pursuant to Michigan Constitution]", Gladney alleged nothing, simply stating "Plaintiff-Intervenor incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1-190, above."  *Id*. at PageID.11-12.

In his ninth claim for relief, "[Negligent Supervision]", Gladney alleged that Prosecutor Getting failed to adequately supervise employees, was aware of "wrongful conduct" but "failed to take appropriate corrective action."  *Id*. at PageID.12.  Gladney provides no factual allegations as to what occurred, when it occurred, or how he was involved.

In his "Declaratory Relief Allegations," Gladney states that there is "[a] present and actual controversy between Plaintiff-Intervenor and Defendants [sic] concerning their rights and respective duties", that "Defendants [sic] violated his rights under Article II, Michigan common law", and that "seeks a judicial declaration of the respective rights and duties of the parties." *Id*. at PageID.12-13.  Gladney, a resident of South Bend, Indiana, has not identified the "controversy" which exists between him and Kalamazoo County Prosecutor Getting.  As discussed, his previous lawsuit against Prosecutor Getting (*Gladney I*) has been dismissed.

In his "Injunctive Relief Allegations," Gladney does not include any factual allegations, stating only that "No plain, adequate, or complete remedy at law is available to Plaintiff-Intervenor to redress the wrongs alleged herein" and that "If this Court does not grant the injunctive relief sought herein, Plaintiff-Intervenor will be irreparably harmed." *Id*. at PageID.13.  In this regard, Gladney provides no explanation for how he is being irreparably harmed by defendant, who is an elected county prosecutor in a different state.

Finally, Gladney seeks compensatory damages, punitive damages, attorney fees and other relief.  *Id*. at PageID.14.  In this regard, Gladney continues to cite irrelevant or unidentified statutes, seeking "reasonable attorneys' fees and costs of suit" pursuant to "Cal. Gov't Code § 12965(b), Cal. Code Civ. Pro. § 1021.5, and other 5 laws[.]" *Id*.

## II.   Discussion

### A.   Gladney has failed to state a claim

Defendant Prosecutor Getting has moved to dismiss this action for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  A complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests.  *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

7

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).

In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). While *pro se* pleadings are to be liberally construed, *see Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), "this court is not required to conjure up unpled allegations." *Dietz v. Sanders*, 100 Fed. Appx. 334, 338 (6th Cir. 2004). Thus, a complaint based upon "an unadorned, the - defendant - unlawfully - harmed - me accusation" is insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678.

Here, the only facts that Gladney alleged are: that he is a man of African descent; that he lived in Kalamazoo, Michigan, from about July 12, 1991 until about August 11, 2019; that he moved to Indiana on or about August 11, 2019; and that he is a person with a mental disability receiving SSI. *See* (second) ¶ 13 and ¶ 19. As discussed, Gladney's complaint includes legal conclusions, irrelevant citations to California law, some bizarre allegations (*e.g.*, that he was discriminated against because he is a Middle Eastern woman) and over 100 missing paragraphs.

In his response to defendant's motion to dismiss, Gladney included a copy of a "Program Discrimination Complaint Policies and Procedures" which was generated by the Kalamazoo County Office of the Prosecuting Attorney, Crime Victim Services Commission (CVSC), Victims of Crime Act (VOCA), and Crime Victim Assistance Grant Program. *See* Program document (ECF No. 10-1). While this undated document may be the "program"

8

referenced by Gladney, the late filing of this document does not salvage his complaint or suggest that he has any claim which can be raised in an amended complaint. In this regard, Gladney has not set forth any allegations as to: when, where, or how defendant Getting violated the program; how Gladney was injured by any such violation; and how any such violation gives rise to a federal claim against Getting.

This is Gladney's second attempt to file a lawsuit against defendant Prosecutor Getting. While Gladney has failed to articulate any claim in either lawsuit, he contends that the complaint in the present case "fully complies with the pleading requirements of Federal Rule of Civil Procedure 8(a) and provides Defendants [sic] fair notice of the charges against them and the grounds therefor." Plaintiff's Response (ECF No. 10, PageID.55). Contrary to Gladney's assertions, his complaint does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief" as required by Fed. R. Civ. P. 8(a)(2). Nor does his complaint set out a claim for relief that is plausible on its face. *See Iqbal*, 556 U.S. at 678. Rather, Gladney's complaint consists of nothing more than a series of "unadorned, the - defendant - unlawfully - harmed - me accusation[s]" which are insufficient to state a claim for relief. *See id.*; Fed. R. Civ. P. 12(b)(6). For all of these reasons, Gladney's complaint should be dismissed for failure to state a claim upon which relief can be granted.

    **B.**  **Res judicata and Collateral Estoppel**

In addition, Prosecutor Getting contends that Gladney's complaint is barred by the doctrines of res judicata and collateral estoppel.

> Under certain circumstances, a defendant may raise res judicata and collateral estoppel in a motion to dismiss. "Res judicata and collateral estoppel are affirmative defenses that must be pleaded." *Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 350 (1971). A defendant may raise an affirmative defense in a motion to dismiss only when the "allegations in the complaint show that a defense exists that legally defeats the claim for relief." *Estate of Barney v.*

> *PNC Bank, N.A.*, 714 F.3d 920, 926 (6th Cir. 2013) (quoting *Marsh v. Genentech, Inc.*, 693 F.3d 546, 554 (6th Cir. 2012))[.]

*Viridis Laboratories, LLC v. Kluytman*, No. 1:22-cv-283, 2022 WL 15453867 at *1 (W.D. Mich. Oct. 27, 2022).  The Court concludes that defendant Getting can raise these two affirmative defenses based on Gladney's complaint, which refers to *Gladney I* and the proceedings in that case.  However, while defendant can raise these affirmative defenses, neither one applies.

Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).  "The preclusive effect of a federal-court judgment is determined by federal common law."  *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008).

> A claim is barred by the res judicata [or claim preclusive] effect of prior litigation if all of the following elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Trustees of Operating Engineers Local 324 Pension Fund v. Bourdow Contracting, Inc.*, 919 F.3d 368, 380 (6th Cir. 2019) (internal quotation marks omitted).

As discussed, the Court dismissed *Gladney I* for failure to state a claim.  A dismissal for failure to state a claim is a judgment on the merits for res judicata purposes.  *Guzowski v. Hartman*, 969 F.2d 211, 216 (6th Cir. 1992).  In evaluating the preclusive effect of such a dismissal, the Court looks to the fourth element, "identity of the causes of action."   This element of res judicata is satisfied "if the claims arose out of the same transaction or series of transactions or [if] the claims arose out of the same core of operative facts." *Browning v. Levy*, 283 F.3d 761, 773-74 (6th Cir. 2002) (internal quotations marks omitted).  Stated differently, "Identity of causes

10

of action means an identity of the facts creating the right of action and of the evidence necessary to sustain each action." *Sanders Confectionary Products, Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 484 (6th Cir.1992).

Here, that element is not met. The Court dismissed the cryptic complaint in *Gladney I* because it did not state any claim for relief. *See Gladney I* (R&R and Opinion) (ECF Nos. 28 and 35). In this regard, the Court could not even address Getting's claim for prosecutorial immunity in *Gladney I* because "Gladney's complaint is so vague that the Court cannot determine the nature of Prosecutor Gettings' actions, let alone whether those actions fell within the scope of prosecutorial immunity." *Id*. (R&R) (ECF No. 28, PageID.112). As discussed, Gladney failed to allege facts to support any claims for relief against defendant Getting in the present case. There cannot be an "identity of the causes of action" when the plaintiff made no factual allegations against defendant Getting in either *Gladney I* or the present case.

Finally, "[i]ssue preclusion, or collateral estoppel, bars subsequent relitigation of a fact or issue where that fact or issue was necessarily adjudicated in a prior cause of action and the same fact or issue is presented in a subsequent suit." *Cobbins v. Tennessee Department of Transportation*, 566 F.3d 582, 589 (6th Cir. 2009)

> Four specific requirements must be met before collateral estoppel may be applied to bar litigation of an issue: (1) the precise issue must have been raised and actually litigated in the prior proceedings; (2) the determination of the issue must have been necessary to the outcome of the prior proceedings; (3) the prior proceedings must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Id*. at 589-90 (6th Cir. 2009) (emphasis omitted). Based on this record, the Court concludes that collateral estoppel does not bar any issues in the present case, because the first element is not met. Specifically, no "precise issue" in the present case was raised or litigated in *Gladney I*.

11

Accordingly, the Court should not apply either res judicata or collateral estoppel as a basis for dismissal.

### III. RECOMMENDATION

For these reasons, I respectfully recommend that defendant Getting's motion to dismiss (ECF No. 8) be **GRANTED** and that plaintiff Gladney's complaint be **DISMISSED** for failure to state a clam upon which relief can be granted.

Dated:  January 25, 2023                                    /s/ Ray Kent
                                                            RAY KENT
                                                            United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).